## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

|  |  |
|---|---|
| **BENJAMIN SCOTT AVERY, on Behalf of Himself and All Others Similarly Situated,** | CASE NO. 4:13-CV-00579 |
| Plaintiff, | |
| v. | |
| **BOYD BROS. TRANSPORTATION, INC.** | UNITED STATES DISTRICT JUDGE BETH PHILLIPS |
| Defendant. | |

## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AN AWARD OF ATTORNEY FEES, EXPENSES AND, AND A CLASS REPRESENTATIVE SERVICE AWARD

Plaintiff, Benjamin Scott Avery, and the putative class move the Court for an Order approving the April 16, 2014 Stipulation of Settlement (ECF 33) as fair, reasonable and adequate, and authorizing disbursement of the Settlement Fund in accordance with the Stipulation. A Memorandum in Support is attached hereto and incorporated herein.

Respectfully Submitted,

O'TOOLE, McLAUGHLIN, DOOLEY & PECORA CO. LPA

/s/ Anthony R. Pecora
Matthew A. Dooley, *Admitted Pro Hac Vice*
Anthony R. Pecora, *Admitted Pro Hac Vice*
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone:    (440) 930-4001
Facsimile:    (440) 394-7208
Email: mdooley@omdplaw.com
          apecora@omdplaw.com
*Counsel for Plaintiff*

I.      <u>**BACKGROUND**</u>

On June 7, 2013, Benjamin Avery, commenced this class action against Boyd Brothers Transportation, Inc. on behalf of himself and all other similarly situated individuals alleging certain violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a-1681x.  Thereafter, and in response to Boyd Brothers' Motion to Dismiss, Avery filed a First Amended Class Action Complaint on August 19, 2013 ("Civil Action").  Specifically, Avery alleged that Boyd Brothers violated the FCRA's mandatory notice provisions, which are triggered when using consumer reports for employment purposes.

***Before*** obtaining a remote applicant's consumer report, Avery alleged that Boyd Brothers failed to notify applicants of their right to obtain a free copy of a consumer background report from the consumer reporting agency within an indicated 60 day period, and to dispute the accuracy or completeness of any information in the consumer report directly with the consumer reporting agency.

***After*** denying employment based on a consumer report, Avery alleged that Boyd Brothers failed to advise these same applicants: (i) that adverse action had been taken based in whole or in part on a consumer report; (ii) the name, address and telephone number of the consumer reporting agency that furnished the consumer report; (iii) that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and (iv) that the consumer may  request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of the report.

Following the filing of the First Amended Complaint, the Parties engaged in informal discovery through which Boyd Brothers provided Class Counsel with information concerning among other things, the consumers who were the subject of consumer reports during the Class Period. Likewise, Class Counsel provided documents to Boyd Brothers, which detailed the factual and legal support for his claims. After reviewing the information and assessing their respective liabilities, the Parties participated in a MAP-approved mediation with Richard E. McLeod in Kansas City, Missouri. After all-day, arduous negotiations, the Parties reached an agreement that was ultimately filed with the Court on January 3, 2014 (ECF 27). Following a teleconference with the Court, the Parties amended the Stipulation of Settlement to clarify the maximum and minimum recoveries for participating Class Members (ECF 33).

## II.     THE SETTLEMENT

The Stipulation provides for a pro rata payment from a $1,046,000.00 Common Fund of up to $240.00 for Class Members who complete a most basic claim form (ECF 33, ¶2.4). Additionally, the Stipulation permits Class Counsel to seek an attorney fee reimbursement of costs, both paid from the Common Fund in a total amount not to exceed 30% of the Fund. (ECF 33, ¶ 8.2). The Stipulation also affords Avery an opportunity to request an incentive award not to exceed $7,500.00 paid from the Fund (ECF 33, ¶8.4). The cost of notice and administration of the settlement is paid by the Fund. (ECF 33, ¶8.1)

## III.    ARGUMENT

### A.      The Final Approval Procedure.

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 WL 3671053, ¶52 (W.D. Mo. Apr. 20, 2004) (Gaitan, J.), the court stated its favorable position regarding settlement of class cases:

This Court is well aware of the long policy of encouraging settlement. In *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.,* 921 F.2d 1371, 1383 (8th Cir.1990), it was held that "the law strongly favors settlements ... [and][c]ourts should hospitably receive them." The policy in favor of settlement is so strong that such agreements are "presumptively valid." *Id.* at 1391. In considering the terms and conditions of the settlement against this background strongly favoring settlement, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1148–49 (8th Cir.1999) (citing *Armstrong v. Board of School Directors,* 616 F.2d 305, 315 (7th Cir.1980)).

*See also* Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainty of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise.") Recognizing that complex litigation can be "notoriously difficult and unpredictable," in the absence of "fraud or collusion," settlements in complex litigation are not to be disturbed. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983))

Under the Federal Rules of Civil Procedure, parties proposing the settlement of the claims of a certified class must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e)(1)(A). Rule 23(e) provides in relevant part:

> [t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, of compromise is fair, reasonable and adequate.

The three-step process for approval of class action settlements in federal court is described in the *Manual for Complex Litigation* §§ 21.632-635 (4th ed. 2004) ("*Manual*") which provides the following procedure:

1. preliminary approval of the proposed settlement at an informal hearing;

2. dissemination of mailed and/or published notice of the settlement to all affected Class members; and

4

3.      a "formal fairness hearing", or final approval hearing, at which *class members* may be heard regarding the settlement, and at which presentations concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*See also Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

Here, the Court has already granted preliminary approval of the proposed settlement, and the Settlement Administrator has completed dissemination of the settlement notice to affected class members. *See* Affidavit of Dan Legierski attached hereto as Exhibit A. Accordingly, the Court need only now determine whether the settlement is fair, reasonable, and adequate. *Manuel* at §§ 21.632-35.

**B.      The Factors to be Considered by the Court.**

In evaluating whether a class action settlement is fair, reasonable and adequate, a court should consider (1) "the merits of the plaintiff's case weighed against the terms of the settlement," (2) "the defendant's financial condition," (3) "the complexity and expense of further litigation," and (4) "the amount of opposition to the settlement." *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir.1988). A settlement agreement is "presumptively valid." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,* 921 F.2d 1371, 1391 (8th Cir.1990). And a "district court's assessment as to the reasonableness of a settlement 'will not be overturned unless the party challenging the settlement clearly shows that the district court abused its discretion.' " *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1148 (8th Cir. 1999). This deferential standard of review is justified because, "[g]reat weight is accorded [to the trial court's] views because [it] is exposed to the litigants, and their strategies, positions and proofs." *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.1975), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975) (internal citation omitted) and two "[a] strong public policy favors agreements, and courts should approach them with a presumption in their favor." *Little Rock School District v. Pulaski County Special School*

5

*District No. 1,* 921 F.2d 1371, 1388 (8th Cir.1990). Lastly, a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, "[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong v. Board of School Directors,* 616 F.2d 305, 315 (7th Cir.1980), *overruled on different grounds, Felzen v. Andreas,* 134 F.3d 873, 875 (7th Cir.1998).

### C.    The Settlement is Fair, Reasonable, and Adequate as a Whole.

#### 1.    *The Merits of Plaintiff's Case Balanced against the Settlement Terms.*

Of the Eight Circuit's four factors in determining fairness, reasonableness and adequacy of a class settlement, the most important consideration is "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *In re Wireless*, 396 F.3d at 933 (citing *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1150 (8th Cir.1999)). In evaluating this factor, the court may weigh "the uncertainty of relief against the immediate benefit provided in the settlement" when considering the strength of the claims and the amount of the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 933 (8th Cir. 2005). Avery's First Amended Complaint seeks statutory damages between $100.00 and $1,000.00 per Class Member for Boyd Brothers' alleged willful violations of the FCRA. *See* 15 U.S.C. § 1681n. Willful violations are proven by demonstrating that the company acted knowingly or with "reckless disregard" of the law. *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 57–58 (2007). Recklessness entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Galloway v. Kansas City Landsmen, LLC*, 4:11-1020-CV-W-DGK, 2013 WL 3336636 (W.D. Mo. July 2, 2013).

The threshold to prove a willful violation of the FCRA on a class basis is a difficult one to cross. If unsuccessful in establishing willfulness, Avery's claims on behalf of the Class Members

6

would fail and they would not be entitled to any monetary relief.  Thus, duplicating the guaranteed payments to members of the Settlement Class is uncertain.  The policy favoring the settlement of complex cases is particularly true in the context of FCRA litigation.  The FCRA is not merely a "complex statutory scheme," but one that has been said to contain "almost incomprehensibly complex provisions" and "esoteric strictures."  *See Burrell v. DFS Servs., LLC,* 753 F. Supp. 2d 438, 440 (D.N.J. Dec. 7, 2010); s*ee also Narog v. Certegy Check Servs.*, 759 F. Supp. 2d 1189, 1194-95 (N.D. Cal. 2011).  Consequently, individuals not only rarely pursue their claims, they can be unaware of them altogether.

Compared to the risks of not approving settlement on behalf of Class members, the benefits are remarkable.  Each Class Member who submitted a valid claim form will a check in the amount $240.00.  This sum, after the expense of notice, administration, attorney fees and costs, provides financial relief for Boyd's alleged FCRA violation that is over two times the statutory minimum in such cases.

Further, and of substantial benefit, Class Members will be more aware of their rights under the FCRA.  This awareness is particularly important due to the trucking industry's high turnover rate.  For example, in 2005, turnover rates in the trucking industry rocketed as high as 130 percent for large carriers.  *See* http://www.memphis.edu/ifti/pdfs/cifts_examining_driver_turnover.pdf. The job market has steadied in the past decade, but still today the turnover rate is near 93 percent. *See* American Trucking Association Article: http://www.truckline.com/article.aspx?uid=33bc3361-8fef-4c73-bd38-98da53ef4d2a. (turnover rates hold above 90 percent for 2014).  By simply receiving the settlement notice, Class Members now, when applying for new employment or losing employment, will be aware of their federally protected rights if a consumer report is used as part of the hiring process.

### 2. The Defendant's Financial Condition.

Boyd Brothers' financial condition does not raise concern as to its ability to pay the settlement. *In re Wireless*, 396 F.3d at 933. Though Boyd Brothers is a privately held corporation, it is one of the nation's top 5 "open deck specialty carriers" and is financially sound. *See* http://finance.yahoo.com/news/boyd-bros-transportation-daseke-inc-190400341.html. The settlement amount was negotiated and agreed to by the attorneys for both parties, each legal team being experienced in complex litigation and evaluating pertinent risks. Although Boyd Brothers may have the ability to withstand a greater financial judgment, the substantial risks and obstacles faced by Avery in proving willfulness militate in favor of approving the settlement. *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002).

### 3. The Complexity and Expense of Further Litigation

Avoiding further costly, lengthy and complex litigation weighs in favor of approving the settlement. *See Wireless Tel.*, 396 F.3d at 933; *accord Petrovic*, 200 F.3d at 1152. "This factor is designed to capture 'the probable costs, in both time and money, of continued litigation.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). Here, the parties engaged in an early attempt to resolve this matter in favor of saving time and financial resources. *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (commending the settling parties for "litigat[ing] the case efficiently and inexpensively"). In the absence of the settlement in this case, it is likely that further litigation would have been complex, expensive, and time consuming. Settlement under such circumstances is clearly favored. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 859-60 (E.D. Mo. 2005).

Indeed, if the settlement were rejected, Avery, and all others similarly situated would bear the burden of proving that Boyd's actions were committed willfully. Proving willful violations

can be very expensive, including more intensive discovery, and would likely take years to resolve. If not resolved by mutual agreement, this case will surely proceed to trial, and probable appeal, and will involve further expense and judicial resources. The trial could last several weeks and involve the introduction of voluminous documentary and deposition evidence and strenuously contested motions, all at great expense to both the Court and the Class. *In re Wireless*, 396 F.3d at 933 (noting "barring settlement, this case would 'likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing.'") Avoiding this result and avoiding prolonged, endless litigation in this matter weighs strongly in support of approval of the Settlement. *See National Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Further, unless the settlement is "clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* at 526 (quoting *Newberg*, § 11:50 at 155). Simply put, it is proper "to take the bird in hand instead of a prospective flock in the bush." *Id.* (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 596, 624 (D. Colo. 1974)).

### 4. Amount of Opposition to the Settlement.

There has been hardly any opposition from the unnamed Class Members. Here, approximately 16,665 individuals were provided notice of the proposed settlement by direct mail. *See* Declaration of Dan Legierski. To date, only one (1) Class Member filed a purported objection[1] and only three (3) have asked to opt out of the Settlement. *Id.* The overwhelming silence from

---

[1] This purported objection was not properly filed in accordance with the instructions provided in the Court's Preliminary Approval Order (ECF 34) and the Class Notice, as it was not filed with the Clerk. Rather it was only mailed to Class Counsel. Failure to timely file and serve written objections will preclude a class member from objecting at the fairness hearing. *See In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F.3d 913, 917 (8th Cir. 2011) (citing *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1257–58 (10th Cir.2004) (dismissing appeal where objector failed to follow proper procedure for filing objection)). Moreover, the purported objector offered no rational challenge to the Stipulation, instead suggesting that each Class Member should receive $10,000.00.

Class Members demonstrates the adequacy and reasonableness of the settlement. *See, e.g.*, *In re Wireless*, 396 F.3d at 933.

      **D.**      **Notice to the Class was Reasonable and Satisfied Due Process.**

In class actions certified under Rule 23(b)(3), notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e). Rule 23(e) specifies that no class action may be dismissed or compromised without court approval, preceded by notice to class members. Fed. R. Civ. P. 23(e). Rule 23(c)(2) requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c). The Rule also requires that the notice inform potential class members that: (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel. *Id.* The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, *Manual for Complex Litig.* § 21.312 (4th ed. 2004).

Here, the class list was compiled from information provided by HireRight Solutions, Inc. ("HireRight"), the consumer reporting agency from which Boyd Brothers procured Class Members' consumer reports. Together, data from multiple sources was cross-referenced to identify unique class members with maximum precision and then to obtain the most recent address information available. The addresses were then checked against the United States Postal Services' National Change of Address ("NCOA") database. Once the class list was compiled, notice was provided by direct mail, postage pre-paid. The professional class action administrator generated and mailed the notices. *See* Declaration of Dan Legierski. As of August 27, 2014, only 13% of

10

the initial 16,665 notices remained undeliverable after repeated efforts to locate new addresses had already been completed. *See id*, ¶¶ 8-9.

There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-76 (1974). Rule 23(e) gives the Court "broad" discretion as to the manner of service of settlement notice. *See, e.g.*, *Grunin*, 513 F.3d at 121; *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (direct notice satisfies due process).

As a backstop, the Settlement Administrator also established a website, www. boydbrosclassaction.com, which published copies of the class notice. Class Members were also able to submit a Claim Form online through this site. Internet email and website communications are routinely included in notification requirements of class action settlements. *See Browning v. Yahoo! Inc.*, 2006 WL 3826714 (N.D. Cal, 2006); *Farinella v. Paypal, Inc.*, 2009 WL 1211912 (E.D.N.Y., 2009); *Choicke v. Slippery Rock Univ.*, 2007 WL 2317323 (W.D. Pa., 2007); *Todd v. Retail Concepts, Inc.*, 2008 WL 3981593 (M.D. Tenn. 2008). Boyd Brothers also served notice of the settlement upon the relevant state and federal authorities as required by the Class Action Fairness Act of 2005, 28 U.S.C. §1715. Class Counsel received only one communication from the Texas Attorney General requesting clarification regarding the scope of the release as it pertained to Texas's rights to enforce its applicable consumer laws. The Parties jointly resolved the question to the satisfaction of the Texas Attorney General.

### E. Approval of the Request for an Incentive Payment, Attorneys' Fees, and Reimbursement of Expenses is Appropriate.

Consistent with the Stipulation, Class Counsel request an award of attorney fees and expenses as a percentage of the common fund, to be capped at thirty percent (30%) of the actual

common fund paid by Boyd Brothers to and for the benefit of the class. Because the total Settlement Fund is $1,046,000.00, the full fee and cost recovery requested is $313,800.00. This sum includes all costs and expenses associated with the case incurred by two law firms that litigated this case on behalf of the Class. It is a fee that is calculated against real dollars and not a purely theoretical claims fund. Every dollar leaves Boyd Brothers and is paid to and for the benefit of the class – no Settlement Funds revert back to Boyd Brothers.[2]

The "percentage-of-the-fund" doctrine has long been recognized in the Eighth Circuit. *See Petrovic*, 200 F.3d at 1157. Indeed, courts in this district and circuit have indicated that the percentage-of-the-fund method is preferable to the lodestar method. *In re Texas Prison Litig.*, 191 F.R.D. 164, 176 (W.D. Mo. 1999); *In re Xcel*, 364 F. Supp. 2d at 991 (recognizing that "[t]here are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method of determining attorney fees in [common fund] cases.") Similarly, the Supreme Court also consistently calculates attorney fees with the percentage-of-the-fund method. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984); *see also Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (noting that fee awards in common fund cases have historically been computed based on a percentage of the fund). The Supreme Court has never adopted the lodestar method over the percentage of the recovery method in a common fund case. *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 943 (E.D. Tex. 2000); *see also Manual for Complex Litigation* § 24.121 at 120.

In this case, the percentage of the fund requested is well within the range of contingency percentages awarded in similar class cases in this district and circuit, which generally fall between

---

[2] Counsel also does not attempt to monetize or calculate attorney fees on a percentage of the benefit associated with various FCRA process changes undertaken by Boyd during the litigation.

25% and 36%. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (awarding 36%); *Wiles v. Southwestern Bill Tele. Co.*, 2011 WL 2416291, at *4 (W.D. Mo. Jun. 9, 2011) (awarding 33%); *Yarrington v. Solvay Pharmaceuticals, Inc.*, 687 F. Supp. 2d 1057, 1065 (D. Minn. 2010) (noting approval of attorney fee awards amounting to between 30-36% of a common settlement fund.) "Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Newberg on Class Actions*, § 14:6. *See also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 class action settlements demonstrates "average attorney's fees percentage [of] 31.71%").

Although the Eighth Circuit has not established factors that a court should consider in determining the reasonableness of a fee award in common fund cases, courts in this district have followed the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See In re Texas Prison*, 191 F.R.D. at 177; *Wiles*, 2011 WL 2416291, at *4. These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. Sister courts have noted that not all individual *Johnson* factors will apply in every case. *In re Xcel*, 364 F. Supp. 2d at 993 (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) ("[R]arely are all the *Johnson* factors applicable; this is particularly so in a common fund situation.")).

13

### 1. The Time and Labor Required, the Difficulty of the Questions Involved, and the Skill Required to Litigate the Case

Class Counsel spent over 280 hours and considerable resources to litigate this case to a valuable settlement. Moreover, Class Counsel researched numerous unique issues pertaining to the litigation, engaged in voluminous informal discovery, and completed lengthy and protracted negotiations to reach a settlement that provides substantial monetary relief to Class Members. The work that Class Counsel performed began before the case was filed, continues to this day, and will extend beyond the final approval until the last dollar is distributed to the class members (or *cy pres*).

The benefits of the Settlement were the direct result of a high degree of skill on the part of Class Counsel. Class Counsel are seasoned practitioners who have been actively engaged in FCRA litigation for many years. *See* Declaration of Anthony Pecora. Class Counsel demonstrated this skill and experience in the efficient prosecution of this class action without placing further strain on judicial time and resources. *See In re Xcel*, 364 F. Supp. 2d at 992 (noting counsel's efficiency in achieving a "just result in a remarkably short period of time").

The Settlement is equally impressive when the difficulty of the questions involved is considered. As set forth above, the difficulty of establishing willfulness in an FCRA case is immense. Further, litigating a class action against a sophisticated defendant represented by capable counsel is always complex. The complexity of any FCRA litigation is thus compounded by considerations of a nationwide class, whose interactions with Boyd Brothers could present differing factual scenarios. The ability of Class Counsel to achieve a valuable settlement in the face of this opposition weighs strongly in favor of the reasonableness of the fee award.

14

### 2. The Preclusion of Other Employment by the Attorneys Due to Acceptance of this Case and the Contingent Nature of the Representation

The efforts of Class Counsel in the prosecution of this class action necessarily infringed upon the time and opportunity to accept other, potentially lucrative litigation. The reality of complex cases is that work is not easily shifted to other attorneys in a firm not familiar with the matter. Indeed, Class Counsel are the only members of their firm with experience in FCRA litigation.

This opportunity cost is compounded by the contingent nature of the representation. "Several courts consider the risk of non-recovery the most important factor in the fee determination." *In re Bistol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233-34 (S.D.N.Y. 2005); *cf. Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.") Class Counsel faced significant risk that they would not receive any compensation for their time and effort spent litigating this case. *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134 (D. N.J. 2002) (noting that the contingency risk in large, complex cases is "very real").

Courts recognize that "the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work. *Garner v. State Farm Mut. Auto Ins. Co.*, No. 08-CV-1365 CW, 2010 WL 1687829, at *2 (N.D. Cal. Apr. 22, 2010) (citing *Vizcaino*, 290 F.3d at 1050). Contingency fees are accepted in the legal profession "as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *In re Washington Pub. Power Supp. Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *see also In re Union Carbide Corp. Consumer Prod. Business Sec. Litig.*, 724 F. Supp. 160,

169 (S.D.N.Y. 1989) (noting "[a] large segment of the public might be denied a remedy for violations [of the law] if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.")  As such, these factors weigh in favor of the reasonableness of the requested fee award.

### 3. *The Customary Fee and Awards in Similar Cases*

As established above, fee awards routinely fall between 25% and 36% in common fund cases.  Additionally, when cross-checked, Class Counsel's lodestar is consistent with fee awards in similar cases. *See Shackleford v. Cargill Meat Solutions*, No. 12-CV-4065-FJG, 2013 WL 937550, at *2 (W.D. Mo. Mar. 8, 2013) ("[T]he lodestar method of calculating fees is sometimes used as a method of double-checking the reasonableness of the percentage-of-the-fund request."); *Yarrington*, 697 F. Supp. 2d at 1065.  Here, the lodestar amount of approximately $90,000.00 results in a multiplier of 3.5[3].  This multiplier is well within the bounds of lodestar multipliers in similar cases. *See In re Xcel*, 364 F. Supp. 2d at 999 (multiplier of 4.7); *In re Charter Commc'n, Inc., Sec. Litig.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (multiplier of 5.61); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (describing multiplier of 4.65 as "modest"); *In re: Oral Sodium Phosphate Solution-Based Prod. Liability Action*, No. MDL 2066, 2010 WL 5058454, at *26 (N.D. Ohio Dec. 6, 2010) (summarizing a survey of 1,120 class action cases across the country and finding an average multiplier of 3.89).  Accordingly, these factors support the reasonableness of Class Counsel's requested fee award.

---

[3] It should be noted that Class Counsel's lodestar will necessarily rise as Counsel continues to commit time and resources *after* final approval relating to issues involving distribution of *cy pres* awards, claims administration, and the Settlement Account. *See Yarrington*, 697 F. Supp. 2d at n. 2.  Simultaneously, the multiplier will decrease.

### 4. *The Amount Involved and the Results Obtained*

The result achieved is a major factor in determining the reasonableness of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[C]ritical factor is the degree of success obtained"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.") When evaluating the value of a class action settlement for purposes of calculating the attorney fee award, courts consider the total economic relief, including the nonmonetary value obtained for the class. *See In re Texas Prison*, 191 F.R.D. at 177.

As described above, Class Members who submitted a claim will receive the maximum payment under the Stipulation of $240.00, more than ***double*** the statutory minimum under the FCRA.[4] More importantly, Class Members have been apprised of their FCRA rights and possible inaccuracies contained in their consumer reports. In the transportation industry, where attrition rates are high, it is critically important for drivers to understand the contents of their consumer files, particularly when the information is almost always provided to a prospective employer. Through the detailed notice process and the receipt of Settlement funds, Class Members are now armed with sufficient information to guard their personal and professional reputations.

---

[4] This recovery is an estimate based upon the number of claims submitted. Assuming the Court awards the requested attorney fees and incentive award, approximately, $675,000.00 will be distributed to 2,553 valid claimants equally. The Stipulation provides for a net cap of $240.00, which is met under the foregoing calculations, with a difference of approximately $61,000.00 to be distributed to *cy pres* beneficiaries under the terms of the Stipulation.

### F. The Requested Incentive Award is Fair and Reasonable.

Generally, it is within the Court's discretion to grant or deny an award of an incentive award. *See In re U.S. Bancorp*, 291 F.3d at 1038. The relevant factors in deciding whether an incentive award is warranted include actions a named plaintiff took to protect the Class's interests, the degree to which the Class has benefitted from those actions, and the amount of time and effort the named plaintiff expended in pursuing litigation. *Id.* (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). The Stipulation provides that Avery may request an incentive award of $7,500.00 deducted from the common fund for his service as the named class representative. Not concerned with personal gain, Avery was instrumental in bringing a suit that resulted in a million-dollar settlement that will benefit thousands of Class Members. Avery participated in the drafting of pleadings and spent considerable time and effort assisting Class Counsel effectively prosecute this case. Indeed, without his participation, the case would never have been filed and relief likely would not have been provided to his fellow Class Members. In light of this, the incentive award for Avery is appropriate.

## IV. <u>CONCLUSION</u>

The Parties reached a settlement that provides genuine relief to Class Members by providing each class member who submitted a valid claim with a significant monetary benefit that is well-above the statutory minimum. The terms of the settlement and circumstances surrounding negotiations as well as the finite end to a costly and protracted litigation satisfies the Eighth Circuit's strictures for final approval.

**WHEREFORE**, Named Plaintiff and the putative class move the Court for an order entering the final approval of this settlement and awarding the incentive payment, attorney fees and costs as requested herein.

Respectfully Submitted,

O'TOOLE, McLAUGHLIN, DOOLEY &
PECORA CO. LPA

/s/ Anthony R. Pecora
Matthew A. Dooley, *Admitted Pro Hac Vice*
Anthony R. Pecora, *Admitted Pro Hac Vice*
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone:      (440) 930-4001
Facsimile:      (440) 394-7208
Email: mdooley@omdplaw.com
           apecora@omdplaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Plaintiff's Motion for Final Approval of the Class Action Settlement for Award of Attorney Fees, Expenses and Class Representative Service Award was filed electronically on this 29th day of August, 2014 in accordance with the Court's Electronic Filing Guidelines. Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System. Parties may access this filing through the Court's Filing System.

/s/ Anthony R. Pecora
*Counsel for Plaintiff*